***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Young, and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of former Deputy Commissioner Young with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant at all relevant times herein.
3. Defendant was self insured at all times relevant herein.
4. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from 1942 until June 30, 1984. Plaintiff did work for approximately six months for defendant at its facility in New Bern, North Carolina in 1969, but returned to the Plymouth, North Carolina, facility on July 17, 1970.
5. The parties stipulated that plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant, and specifically, that plaintiff was exposed to asbestos for thirty days within a seven-month period as required by N.C. Gen. Stat. § 97-57.
6. The parties stipulated that defendant manufactures paper and paper products such as paper for crafts, paper bags, boxes, and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina is of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960s and the vast majority of the insulation used in the original construction of the buildings was asbestos containing. Steam producing boilers are used at the facility in Plymouth, North Carolina. In addition, there are hundreds of miles of steam pipes that were covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
7. The parties stipulated that plaintiff's income for the 52 weeks prior to his date of last employment was $22,029.01.
8. Should N.C. Gen. Stat. §§ 97-60 through 97-61.7 be declared unconstitutional, plaintiff reserves the right to offer additional testimony on the issues of loss of wage earning capacity and/or disability. Defendant objected thereto.
9. The Pre-Trial Agreement of the parties for this case is stipulated into evidence.
10. The employment and income records of plaintiff have been stipulated into evidence.
11. The transcript of Joseph Wendlick's testimony at civil trial, the curriculum vitae of Joseph Wendlick and other documentation produced by defendant in discovery has been stipulated into evidence.
12. The relevant medical records of plaintiff, including documentation from Drs. Anderson, Bernstein, Dula and Johnson have been stipulated into evidence.
13. Defendant stipulated that all the procedures used in defendant's asbestos medical surveillance program at its facility in Plymouth, North Carolina, were consistent with those outlined as part of the North Carolina Dusty Trades Program which defendant contends is contained in N.C. Gen. Stat. §§ 97-60 through 97-61.7. Further, that these procedures were in place during plaintiff's employment at the Plymouth facility.
14. Defendant stipulated that the medical monitoring procedures used in its asbestos medical surveillance program in all Weyerhaeuser plants in the State of North Carolina were the same.
15. Defendant stipulated that the Weyerhaeuser facilities to which Mr. Joseph Wendlick referred to in his deposition transcript, which has been stipulated into evidence, include the facilities in North Carolina.
16. Plaintiff contends he is entitled to an award of a ten percent (10%) penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12. Defendant agrees that should the claim be found compensable, defendant shall pay an amount of five percent (5%) of all compensation exclusive of medical compensation.
17. The parties contend that the contested issues before the undersigned are:
 (a) What benefits, monetary and/or medical, is plaintiff entitled to receive, if any, at this time?
 (b) Is plaintiff entitled to the additional panel examinations as provided in N.C. Gen. Stat. § 97-61.3 et seq. to determine what, if any, final compensation he may be due?
 (c) Does N.C. Gen. Stat. §§ 97-60 through 97-61.7 to plaintiff's claim for benefits, and regardless, are these statutes in violation of the Constitutions of the United States and North Carolina?
 (d) Is plaintiff engaged in an occupation, which has been found by the Industrial Commission to expose employees to the hazards of asbestosis under the provisions of N.C. Gen. Stat. §§ 97-60 through 97-61.7?
 (e) At the time of the diagnosis, was plaintiff subject to removal from an occupation, which exposed plaintiff to the hazards of asbestosis, as contemplated by N.C. Gen. Stat. §§ 97-60 through 97-61.7?
 (f) Whether plaintiff is entitled to attorney fees for the unreasonable defense of this matter?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was an employee of defendant at its Plymouth, North Carolina, facility from 1942 until 1969 and from July 17, 1970, until June 30, 1984. Plaintiff was an employee of defendant at its New Bern, North Carolina, facility for approximately six months during 1969.
2. Plaintiff was heavily exposed to asbestos dust while employed at defendant's facility in Plymouth, North Carolina. When plaintiff first started working in 1942, he was responsible for covering pipes with asbestos insulation. The sizes of the asbestos insulation varied and much of the asbestos covering came in the form of sticks. Plaintiff would often cut the insulation with a knife to get the pieces to fit into the pipe joints or "nineties." This would cause a great deal of asbestos dust to fly into the air. In addition, some of the asbestos used for insulating would come in powder form in bags. Plaintiff worked directly with asbestos powder, mixing the asbestos with water to make a mud used to insulate the pipes. Asbestos-insulated pipes were all over the mill, which required insulation repair work. While working as an insulator, plaintiff had to do his own clean-up work with a broom, which was also very dusty. Defendant never provided plaintiff with a mask or respirator to prevent him from exposure to asbestos.
3. Plaintiff was exposed to asbestos containing materials on a regular basis for more than 30 working days or parts thereof inside of seven consecutive months from 1942 to 1984.
4. Dr. Jeffrey Garland performed plaintiff's Advisory Medical Evaluation at East Carolina University on September 28, 2000. Dr. Garland testified that plaintiff had a very large amount of asbestosis exposure, which would be significant enough to develop the disease of asbestosis. Dr. Garland testified that he personally reviewed the chest x-ray dated August 30, 1999, and saw calcified pleural plaques consistent with asbestos-related pleural disease and diffuse interstitial infiltrates consistent with asbestosis. It was Dr. Garland's overall opinion, and the Full Commission finds as fact, that plaintiff suffers from asbestosis, asbestos-related pleural disease and COPD.
5. Dr. Richard Bernstein diagnosed plaintiff with asbestosis on April 28, 2000. Dr. Bernstein's diagnosis was based upon plaintiff's long history of asbestos exposure and latency period; the 1/1 profusion on chest x-ray; rales on examination; pleural disease and symptomology. Dr. Bernstein confirmed these findings during his deposition on April 9, 2001.
6. Dr. Albert Curseen saw plaintiff during an office visit on May 9, 2000, and independently confirmed plaintiff's diagnosis of asbestosis. Dr. Curseen's diagnosis was based upon plaintiff's extremely strong history of asbestos exposure and adequate latency period; his chest radiographs; clubbing of the fingernails; rales on examination; pulmonary function testing; history of dyspnea; and shortness of breath. Dr. Curseen confirmed these findings during his deposition on March 22, 2001.
7. Dr. Fred Dula, a certified B-reader, interpreted multiple chest films of plaintiff including a CT scan and chest x-ray dated August 3, 2000, a chest x-ray and CT scan dated December 13, 2000, and a CT scan dated October 27, 2000. During his deposition on April 24, 2001, Dr. Dula testified that plaintiff's overall radiographic findings were consistent with asbestosis and asbestos-related pleural disease.
8. Dr. Phillip Lucas, a certified B-reader, interpreted a chest x-ray dated August 30, 1999, and determined that there were irregular bilateral interstitial changes and pleural changes consistent with the pneumoconiosis of asbestosis. During his deposition on April 10, 2001, Dr. Lucas testified that plaintiff's radiographic findings were consistent with asbestosis assuming plaintiff had an adequate exposure history and latency period.
9. Dr. James Johnson, a certified B-reader, interpreted plaintiff's high-resolution CT scan dated November 17, 1999. In his report, Dr. Johnson determined that there were interstitial changes and severe pleural changes present, which would be consistent with asbestosis. During his deposition on April 10, 2001, Dr. Johnson confirmed that his findings on the CT scan were entirely consistently with asbestosis.
10. Dr. Dominic Gaziano, a certified B-reader, interpreted plaintiff's chest x-ray dated August 30, 1999, and reported parenchymal abnormalities in the middle and lower lung zones consistent with the pneumoconiosis of asbestosis, as well as extensive pleural abnormalities consistent with the pneumoconiosis of asbestosis.
11. Defendant failed to produce any conflicting medical evidence to refute these findings.
12. Plaintiff developed asbestosis, an occupational disease, as a result of his employment with defendant.
13. Plaintiff's employment with defendant placed him at an increased risk of developing asbestosis than members of the general public.
14. Plaintiff developed asbestos-related pleural disease, an occupational disease, as a result of his employment with defendant. Plaintiff's employment with defendant placed him at an increased risk of developing asbestos related pleural disease than members of the general public.
15. Plaintiff began having significant shortness of breath problems before leaving his job on June 30, 1984. At the hearing before the Deputy Commissioner, plaintiff testified that he was frequently out of breath and was increasingly tired. He could not move the heavy paper rolls, which he was required to do as part of his job. He began to have difficulty in just walking, which was part of his job. Plaintiff testified that it was better to quit before he was fired for not being able to do his job. Plaintiff had to stop working at the age of 62 because of his progressive shortness of breath and weakness.
16. Plaintiff has only a 3rd grade education. He worked for defendant all of his life, a total of 42 years and was making over $22,000.00 a year when he had to retire early. Plaintiff did not actively seek employment after he retired in 1984 because of his increasingly severe shortness of breath, his inability to perform at his job at defendant, his age, his education, and the lack of comparable employment opportunities in the rural area in which he lives.
17. Plaintiff's breathing has continued to decline since he has left the employment of defendant. His breathing is currently so bad that he is on oxygen three or four times per day for 30 minutes to an hour. His pulmonary function tests show that he has a Class IV breathing impairment, the most severe class.
18. Dr. Garland testified, and the Full Commission finds as fact that plaintiff is a Class IV impaired individual and that he prescribed oxygen for plaintiff during his second office visit. He testified that an individual at plaintiff's age with his degree of impairment would not be able to perform any type of physical labor. Further, Dr. Garland testified that a component of his impairment could certainly be from his asbestosis and that when you have two co-existing lung diseases such as asbestosis and COPD, it is extremely difficult to determine the degree that each of the diseases contributes to the total impairment. Finally, Dr. Garland testified that plaintiff's disability would be worsened by the fact that he had both, rather than just one, lung disease.
19. Dr. Curseen testified that plaintiff is at a Class IV level of respiratory impairment by AMA guidelines. He also testified that plaintiff is disabled from working in just about any job since he is having shortness of breath just doing his own activities of daily living. Further, Dr. Curseen testified that there is no way to separate out how much of plaintiff's current impairment is due to his asbestosis and how much is due to his smoking.
20. Dr. Bernstein testified that plaintiff has 100% impairment based upon the AMA guidelines. Dr. Bernstein also testified that plaintiff's impairment is consistent with being totally disabled from gainful employment and that he cannot perform any task involving physical exertion. Dr. Bernstein opined that plaintiff's asbestosis is a significant contributing factor to his impairment.
21. Plaintiff's pulmonary impairment is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation and some treatment in the future as a result of his asbestosis and asbestos related pleural disease. Further, the medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos related cancers.
22. Defendant's Plymouth facility was found to have high levels of friable asbestos dust by their own Industrial Hygienist, Joseph Wendlick. As a result of Mr. Wendlick's findings, an asbestos medical monitoring program was initiated to comply with the dusty trade provisions of the N.C. Gen. Stat. §§ 97-60 through 97-61.7.
23. Defendant, in lieu of participating in the North Carolina Dusty Trades Program as contained in N.C. Gen Stat. §§ 97-60 through 97-61.7, implemented its own asbestos medical surveillance program, which it asserts was consistent with the dusty trades statutory provisions. Defendant convinced the State of North Carolina that defendant need not be included in the state Dusty Trades Program since defendant's asbestos medical surveillance program served the same purpose. If defendant's medical surveillance program was in place during plaintiff's employment with defendant, then it is likely that plaintiff would have participated in the program by virtue of his employment with defendant.
24. Plaintiff may have relied upon defendant's representations to him and to his fellow employees that defendant's asbestos medical surveillance program would monitor his exposure to asbestos and would medically screen and monitor him for any signs of the development of asbestosis. In accordance with such program, plaintiff would have been seen by defendant's doctors on occasions throughout his employment with defendant, raising the possibility of discovery of plaintiff's asbestosis while he was still employed by defendant.
25. Plaintiff was likely not aware of his development of asbestosis until after he retired because defendant's medical surveillance program did not effectively monitor and track his development of asbestosis during his employment with defendant, that had defendant's program provided proper medical screening to inform plaintiff of his development of asbestosis, he would have been diagnosed with asbestosis while still in defendant's employ and thus subject to an order of removal and subsequent award. If plaintiff, to his detriment, relied upon the false representations of defendant in regard to its medical monitoring of plaintiff, then defendant may be equitably estopped from arguing that plaintiff is not entitled to the 104 week award pursuant to an order of removal. Additional evidence as to the elements of equitable estoppel would be required for the Commission to make a determination on the matter.
26. N.C. Gen. Stat. §§ 97-60 through 97-61.7 are constitutional.
 ***********
Based upon the foregoing stipulations and findings of fact, the undersigned makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos-related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. §§ 97-53(24) and 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. The provisions of N.C. Gen. Stat. § 97-60 et seq. are constitutional.
4. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks."
5. The North Carolina Supreme Court determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure. See Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001). However, the instant case may be distinguishable from Austin in that plaintiff was likely not aware of his development of asbestosis until after he retired because defendant's medical surveillance program did not effectively monitor and track his development of asbestosis during his employment with defendant. Had defendant's program provided proper medical screening to inform plaintiff of his development of asbestosis, he might have been diagnosed with asbestosis while still in defendant's employ and, thus, subject to an order of removal and subsequent award. Plaintiff may have, to his detriment, relied upon the representations of defendant in regard to its medical monitoring of plaintiff. Thus, defendant may be equitably estopped from arguing that plaintiff is not entitled to the 104 week award pursuant to an order of removal.
6. The doctrine of equitable estoppel is a means of preventing a party from asserting a defense that is inconsistent with its prior conduct.Purser v. Heatherlin Properties, 137 N.C. App. 332, 337, 527 S.E.2d 689,692 (2000), cert. denied, 352 N.C. 676, 545 S.E.2d 428 (2000) (citingGodley v. County of Pitt, 306 N.C. 357, 360, 293 S.E.2d 167, 169
(1982)). In particular, the rule is grounded in the premise that `it offends every principle of equity and morality to permit a party to enjoy the benefits of a transaction and at the same time deny its terms or qualifications.' Id. (quoting Thompson v. Soles, 299 N.C. 484, 487,263 S.E.2d 599, 602 (1980)). The law of estoppel applies in workers' compensation cases, and may be used to ensure coverage of a work-related injury. Id. (citing Carroll v. Daniels and Daniels Constr. Co., Inc.,327 N.C. 616, 620, 398 S.E.2d 325, 328 (1990).
7. Defendant's argument to the effect that estoppel was raised too late in this case is to no avail. In Purser v. Heatherlin Properties, supra,
the doctrine was raised for the first time by the Court of Appeals itselfex meru moto.
8. In Belfield v. Weyerhaeuser Co., 77 N.C. App. 332, 335 S.E.2d 44
(1985), the North Carolina Court of Appeals held that equitable estoppel was appropriate to prevent an employer from raising a time limitation when the employer misrepresented to the employee that his rights under the Workers' Compensation Act were being exercised on his behalf by the employer. See Id. at 337, 47. The court stated:
 The commonest type of case is that in which a claimant, typically not highly educated, contends that he was lulled into a sense of security by statements of employer or carrier representatives that `he will be taken care of' or that his claim has been filed for him or that a claim will not be necessary because he would be paid compensation benefits in any event. When such facts are established by the evidence, the lateness of the claim has ordinarily been excused.
Id. (quoting 3 A. Larson, The Law of Workmen's Compensation, Section 78.45 at 15-302 through 15-305 (1983)). In the case before the Commission, defendant similarly seeks to argue that the 104 week award pursuant to an order of removal is not timely because plaintiff was not diagnosed until after he retired. However, this Commission will not permit defendant to use a time limitation defense if there is evidence suggesting that defendant's own medical surveillance program failed to detect plaintiff's development of asbestosis while he was still in defendant's employ, or failed to disclose to plaintiff that he had developed asbestosis when defendant had knowledge thereof. Such acts may inequitably prevent plaintiff from receiving an order of removal and subsequent award that he otherwise deserved. For these reasons, defendant may be equitably estopped from arguing as to the timeliness of plaintiff's order or removal and subsequent award. Evidence as to the elements of estoppel is required before the Commission can make a determination on the matter. Therefore, this issue must be held in abeyance pending the presentation of such evidence.
9. Plaintiff is entitled to payment of all medical expenses incurred or to be incurred as a result of his asbestosis and asbestos related pleural disease for so long as such examinations, evaluations and treatments tend to affect a cure, give relief or lessen his disability. N.C. Gen. Stat. §§ 97-25; 97-59.
10. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§ 97-61.1et seq. and is further entitled to any additional benefits due to plaintiff which shall be determined after additional examinations and hearings.
11. Plaintiff's claim for attorney's fees from defendant on the ground that defendant unreasonably defended this claim pursuant to N.C. Gen. Stat. § 97-88.1 is hereby held in abeyance until the final award is issued in this claim.
12. This claim must be remanded to a deputy commissioner for further hearing on the issue of estoppel, and for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further compensation in addition to medical and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her asbestosis and asbestos related pleural disease for so long as such examinations, evaluations and treatments tend to affect a cure, give relief or lessen her disability.
2. Plaintiff shall undergo additional examinations as provided by law.
3. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
4. The Commission additionally retains jurisdiction in this matter to address the issue of equitable estoppel, as raised by plaintiff, as a means of awarding to plaintiff the 104 week award pursuant to N.C. Gen. Stat. § 97-61.5.
5. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further compensation under the Act beyond the medical compensation awarded herein and any other issues in controversy including equitable estoppel are hereby held in abeyance pending the outcome of further hearings.
This 27th day of March 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER